## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
                                          :
**DALEY ANTOINE,**                        :     **CASE NO. 3:14-cv-515**
                          **Plaintiff,**  :
          **v.**                          :
                                          :
**CHIPOTLE MEXICAN GRILL, INC.,**         :
                          **Defendant.**  :     **APRIL 17, 2014**
_____
                                          :

### NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1332, l441 & 1446
### BY DEFENDANT CHIPOTLE MEXICAN GRILL, INC.

Defendant Chipotle Mexican Grill, Inc. ("Chipotle"), hereby removes this action to this Court pursuant to 28 U.S.C. §§ 1332, 1441 & 1446, and says:

1.    Complaint Filed on March 18, 2014. On March 18, 2014, plaintiff Daley Antoine commenced this civil action by filing a Complaint in the Superior Court of Connecticut, Judicial District of Hartford, captioned *Daley Antoine v. Chipotle Mexican Grill, Inc.* (the "State Action"). A true and correct copy of the State Court Docket Sheet, Complaint and Statement of Amount in Demand is attached hereto as **Exhibit A**.

2.    Chipotle Served on March 19, 2014. Chipotle was served with the Complaint by personal service on March 19, 2014. A true and correct copy of the Summons served upon Chipotle with the Return of Service is attached hereto as **Exhibit B**.

3.    Nature of Action in Plaintiff's Complaint. Plaintiff's Complaint in the State Action purports to allege four claims under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, *et seq.* ("CFEPA"), including sex discrimination, hostile work environment, sexual harassment and retaliation. *See* Complaint, attached hereto

as Exhibit A.   The claims in the State Action are not nonremovable claims as described in 28 U.S.C. § 1445.

4.     <u>Removal Timely</u>. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of receipt by Chipotle of the Complaint.

5.     The action was pending in the Superior Court of Connecticut, Judicial District of Hartford, which is in the territory of the United States District Court for the District of Connecticut.

6.     Pursuant to 28 U.S.C. § 1446(a), the following process, pleadings and orders have been served thus far in the State Action and are attached hereto:

a.     Summons, Complaint and Statement of Amount in Demand served on March 19, 2014, attached hereto as Exhibits A and B.

7.     <u>The Court has Diversity Jurisdiction over Plaintiff's Connecticut Law Claims</u>. In the Complaint, plaintiff asserts claims under the CFEPA, which prohibits discrimination on the basis of sex. Plaintiff's CFEPA claims are properly removable under 28 U.S.C. § 1441(a) in that the district court would have original jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction). Under 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (1) citizens of different States . . . ."

8.     <u>Diversity Jurisdiction is Proper</u>.  This matter is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1332(a), and is one which may be removed to this Court by Chipotle pursuant to 28 U.S.C. § 1441(a), in that it is a civil

action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.    <u>Diversity of Citizenship Exists Between Parties</u>.   Plaintiff alleges that he resides in East Haven, Connecticut (Complaint, ¶ 4, attached hereto as Exhibit A.) As discussed in detail below, Chipotle is a citizen of the States of Delaware and Colorado. Therefore, diversity of citizenship exists and supports removal under 28 U.S.C. § 1332(a).

10.    <u>Chipotle is a Delaware Corporation.</u>   A corporation is a citizen both of the state in which it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c). Chipotle is incorporated under the laws of Delaware. (*See* Declaration of David Gottlieb ("Gottlieb Decl."), ¶ 4, attached hereto as **Exhibit C**.)

11.    <u>Chipotle's Principal Place of Business is in Colorado</u>.   Under the "nerve center" test articulated in *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010), a corporation's "'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities."   *Id.* at 1186 (citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986); *Scot Typewriter Co. v. Underwood Corp.*, 170 F. Supp. 862, 865 (S.D.N.Y. 1959)).   As explained below and in the attached Declaration of David Gottlieb, Chipotle's high level officers direct, control and coordinate the corporation's activities throughout the United States and internationally from its corporate headquarters in Denver, Colorado.

12.    Chipotle is headquartered at 1401 Wynkoop Street, Suite 500, Denver, CO  80202.  (*See* Gottlieb Decl. at ¶ 5 & Exhibit 1, p. 1, attached hereto as Exhibit C [identifying 1401 Wynkoop Street, Suite 500, Denver, Colorado  80202, as the address

of Chipotle's "Principal Executive Offices"].) Chipotle employs approximately 150 executive and administrative employees at the corporation's headquarters in Denver, Colorado. (*See id.* at ¶ 6.) As explained in detail below, the majority of Chipotle's executive officers and principal decision-makers are headquartered in, and work from, its Denver offices. (*See id.* at ¶¶ 14-27.)

13.   Although Chipotle does maintain a few other offices in other parts of the United States, each such office serves a limited purpose and houses a relatively small number of employees. (*See id.* at ¶¶ 7-10.)

14.   There is a presumption that Chipotle's principal place of business is located at its Denver headquarters. *See Friend*, 130 S. Ct. at 1192 (a corporation's "'principal place of business' . . . in practice . . . should normally be the place where the corporation maintains its headquarters"), 1193-94 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."; "A 'nerve center' approach, which ordinarily equates that 'center' with a corporation's headquarters . . . ."); *Wisconsin Knife Works*, 781 F.2d at 1282 ("In the absence of any reason to think that Black & Decker's principal place of business might be in Illinois or Delaware, the two states of which the defendant is a citizen, the fact that its headquarters is in Maryland warrants an inference that the parties are of diverse citizenship.").

15.   In addition to serving as its headquarters, Chipotle's Denver offices are also its "nerve center" because it is the place from which its "high level officers direct, control, and coordinate the corporation's activities." *Friend*, 130 S. Ct. at 1186.

16.   Although, as of December 31, 2013 (the date reported in Chipotle's most recently filed Form 10-K), Chipotle operated, directly or through its affiliates, more than

1,500 restaurants throughout the United States, as well as in Canada, England, Germany and France (*see* Gottlieb Decl., ¶ 26 & Exhibit 1, attached hereto as Exhibit C), the operations of those restaurants are directed, controlled and coordinated by the high level officers resident in the corporation's Denver headquarters.  Where, as with Chipotle, "'a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective.'"  *Friend*, 130 S. Ct. at 1191 (quoting *Scot Typewriter Co.*, 170 F. Supp. at 865).

17.    Chipotle's principal decision makers are its executive officers, executive directors, board of directors and executive team directors/executive regional directors. (*See* Gottlieb Decl., ¶ 12, attached hereto as Exhibit C.)

18.    Each of Chipotle's seven primary executive officers has offices in and works from the corporation's Denver headquarters, with two of them also working part of their time from an office in New York City. (*See id.* at ¶¶ 14-18.)  Chipotle's two co-Chief Executive Officers are the principal executive officers of the corporation and are responsible for the total management of the corporation by facilitating the operation of its business while guiding its officers and employees in furtherance of the company's objectives.  (*See id.* at ¶ 14.)  One of Chipotle's two co-Chief Executive Officers works from offices in the corporation's Denver headquarters, while the other co-Chief Executive Officer splits his time between the Denver headquarters and an office located at 148 Fifth Avenue, New York, New York 10011.  (*See id.*)  Chipotle's Chief Financial

Officer – who is the corporation's principal financial and accounting officer and is responsible for all financial, accounting and reporting functions of the corporation, as well as for overseeing information technology, training, safety, security and risk for the entire corporation – works from the corporation's Denver headquarters.  (*See id.* at ¶ 15.)  Chipotle's Chief Marketing and Development Officer – who is responsible for the physical expansion of the corporation by overseeing the identification of new markets for Chipotle restaurants and the construction of new restaurants in appropriate markets throughout the United States and internationally – splits his time between Chipotle's office in New York City and its headquarters in Denver. (*See id.* at ¶ 16.)  The Chief Marketing and Development Officer is also responsible for improving the corporation's marketing direction and message, and oversees all advertising and promotional programs (including print, outdoor, transit and radio advertisements), in-store communications and design elements (such as menus and signs) and splits his time between the corporation's office in New York City and its headquarters in Denver.  (*See id.*)

19.     Chipotle also employs two Restaurant Support Officers, who are responsible for the overall restaurant operations within their respective regions.  (*See id.* at ¶ 18.)  Both of the Restaurant Support Officers report directly to the co-Chief Executive Officer in Denver, who, along with the other co-Chief Executive Officer, is ultimately responsible for all business operations. The two Restaurant Support Officers are based out of Denver, Colorado. (*See id.*)

20.     Each of Chipotle's executive directors has offices in and works from the corporation's Denver headquarters. (*See id.* at ¶¶ 19-23.) Chipotle's Executive Director

of IT – who is responsible for maintaining and improving the corporation's integrated information system, which manages the flow of information within each of the corporation's restaurants and between the restaurants and the corporate offices in Denver – works from the corporation's Denver headquarters.  (*See id.* at ¶ 20.) Chipotle's Executive Director of Purchasing is responsible for overseeing the procurement of food ingredients, equipment and supplies for all Chipotle restaurants, throughout the United States and internationally, and works from an office in the corporation's Denver headquarters.  (*See id.* at ¶ 21.) Chipotle's Executive Director of Facilities and Construction is responsible for overseeing the development, construction, and maintenance of new and existing Chipotle restaurants, and works from an office in the corporation's Denver headquarters. (*See id.* at ¶ 22.) Chipotle's Executive Director of Safety, Security and Risk is responsible for overseeing Chipotle's efforts to minimize its exposure to a variety of potential sources of liability, and also works from an office in Chipotle's Denver headquarters. (*See id.* at ¶ 23.)

21.    Chipotle's board of directors consists of nine members, including the corporation's two co-CEOs. (*See id.* at ¶ 24.) The members of Chipotle's board of directors are responsible for adopting policies to support the corporation's values and to provide good corporate governance for the entire corporation. (*See id.*) Chipotle's board of directors typically meets three or four times per year in Denver, Colorado, and one time per year in some other, varying location. (*See id.*)

22.    Chipotle also employs Executive Team Directors and Regional Directors in the seven regions into which its restaurants are divided (i.e., Rocky Mountain, Pacific, Central, Southeast, Southwest, Mid-Atlantic and Northeast), who are responsible for

business operations in their regions but who report to one or the other of the two Restaurant Support Officers. (*See id.* at ¶ 25.) Each of the Executive Team Directors or Regional Directors spends the significant majority of his or her time working at, and traveling between, the restaurants in his or her respective region, rather than working from a fixed office location.  (*See id.*)

23.     In addition, Chipotle's Customer Service department is located in its Denver headquarters.  (*See id.* at ¶ 23.)

24.     Thus, the Denver corporate headquarters of Chipotle is not simply an office where the corporation holds its board meetings or where its principal decision makers can work when they happen to be in Colorado. (*See id.* at ¶ 28; *see also Friend*, 130 S. Ct. at 1192 [A corporation's "'principal place of business' . . . should normally be the place where the corporation maintains its headquarters – provided that the headquarters is . . . not simply an office where the corporation holds its board meetings . . . ."].)

25.     Although Chipotle employs over 45,000 people and operates more than 1,500 restaurants throughout the United States, as well as in Canada, England, Germany and France, almost all of the corporation's high level officers who direct, control and coordinate its activities work from the Denver headquarters, with two of the executive officers splitting their time between Denver and New York City.  (*See* Gottlieb Decl., ¶ 14, 16, 26-27 & Exhibit 1, attached hereto as Exhibit C.) As such, virtually all of Chipotle's core executive and operational functions are carried out from its Denver headquarters, and, to a much lesser extent, from its small executive office in New York City. (*See  id.* at ¶ 27.) With the exception of some accounting functions that are

performed by employees in Columbus, Ohio, Chipotle's major administrative functions are conducted in its Denver headquarters, as well. (*See id.*)

26.    This evidence demonstrates that Chipotle's "nerve center" is its Denver headquarters.  *See Friend*, 130 S. Ct. at 1186 ("To support its position [that its "nerve center" was in New Jersey], Hertz submitted a declaration by an employee relations manager that . . . stated that the 'leadership of Hertz and its domestic subsidiaries is located at Hertz's 'corporate headquarters' in Park Ridge, New Jersey; that its 'core executive and administrative functions . . . are carried out' there and 'to a lesser extent' in Oklahoma City, Oklahoma; and that its 'major administrative operations . . . are found' at those two locations."); *Scot Typewriter Co.*, 170 F. Supp. at 864 ("The executive offices of the defendant are located in New York; its president and Chairman of the Board, three of five Vice-Presidents, its Treasurer and Assistant Treasurer, Secretary, Comptroller, Director of Dealer Sales and Director of Installment Sale Collections all maintain offices there.  Basic policy decisions are made in the New York office. The personnel, industrial relations, public relations, purchasing, rental and general services, general office sales, international, advertising and sales promotion departments are all headquartered in New York.  Customer relations with respect to service, credit, and accounting, affecting sales wherever made, are administered from New York."); *Chien v. Commonwealth Biotechnologies, Inc.*, No. 3:12-CV-1378-AWT, 2013 U.S. Dist. LEXIS 74458, at *8, 2013 WL 2319331 (D. Conn. May 28, 2013) (finding that although Defendant had offices in Connecticut and was licensed and doing business in Connecticut, Defendant was actually a citizen of Virginia because its principal place of

business was in Virginia and its "executive officers direct, control and coordinate its activities in . . . Virginia.") (copy attached hereto as **Exhibit D**).

27.   <u>The Amount in Controversy Exceeds $75,000.00</u>. For the Court to have original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a), the matter in controversy must exceed the sum or value of $75,000, exclusive of interest and costs.

28.   A conservative, good-faith estimate of the value of plaintiff's claims indicates that, if he prevails, he is likely to recover in excess of $75,000.[1]  Plaintiff seeks to recover, among other things, past and future lost income, damages for emotional distress, attorneys' fees and punitive damages.   (*See* Complaint, ¶¶ 23-35 & WHEREFORE clauses (Exh. A).)

29.   <u>Back Pay Damages</u>.   Under the CFEPA, plaintiff is entitled to back pay as a component of his monetary damages. Conn. Gen. Stat. § 46a-104; *see also Baron v. Maxam N. Am., Inc.*, No. 3:11-CV-198-JCH, 2012 U.S. Dist. LEXIS 52315, at *8–9, 2012 WL 1247257 (D. Conn. Apr. 13, 2012) (copy attached hereto as **Exhibit E**). Back pay in employment discrimination cases is calculated from the date of the adverse employment action until the date of judgment.  *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1472-73 (11th Cir. 1985); *Banks v. Travelers Companies*, 180 F.3d 358, 364 (2d Cir. 1999) (ADEA context); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 167 (2d Cir. 1998) (same).

30.   Plaintiff's employment with Chipotle was terminated on March 16, 2013, approximately thirteen months ago. (*See* Termination Form, attached hereto as **Exhibit**

---

[1]       Chipotle does not concede that plaintiff is likely to prevail on any of the asserted claims or that, if plaintiff does prevail on any of the asserted claims, he is entitled to any damages, punitive damages, attorneys' fees or other relief.  Chipotle reserves the right to dispute, and to defend against, the asserted claims, both with regard to liability and all forms of requested damages and relief.  *See Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (to establish the jurisdictional amount, a removing defendant need not concede liability for that amount).

**F**.)  As of his termination, plaintiff was paid an hourly wage of $13.00. (*See* Declaration of Kristin Dominguez ("Dominguez Decl."), ¶ 5, attached hereto as **Exhibit G**.) An hourly wage of $13.00 equates to $520 per week, assuming a 40-hour workweek. Therefore, assuming plaintiff's rate of pay remained consistent, his damages for lost wages from March 16, 2013 through the date of this Notice of Removal would be more than $27,040.00. By the time this case is resolved at trial, likely no earlier than April 2015 (a year from the date this Notice is filed), plaintiff's unmitigated lost wages could amount to approximately $54,080. *See Savage v. Envirotest Sys. Corp.*, No. 3:96-CV-1931, 1996 WL 732551, at *3 (D. Conn. Dec. 13, 1996) (calculating plaintiff's back pay damages for 12 months through trial for purposes of determining the amount in controversy) (copy attached hereto as **Exhibit H**).

31.    <u>Front Pay</u>. Under the CFEPA, plaintiff may also obtain front pay as a component of his monetary damages. *See*, *e.g.*, *Weaver v. Readco Mgmt., LLC*, No. CV-10-6005041, 2010 Conn. Super. LEXIS 3020, 2010 WL 5095347 (Conn. Sup. Nov. 24, 2010) (trial court awarded front pay to plaintiff on CFEPA claims) (copy attached hereto as **Exhibit I**); *Mody v. Gen. Elec. Co.*, No. 04-CV-358, 2006 U.S. Dist. LEXIS 77929, at *9–12, 2006 WL 3050834 (D. Conn. Oct. 25, 2006) (court found award of 8 years of front pay reasonable) (copy attached as **Exhibit J**); *Shorter v. Hartford Fin. Servs. Grp., Inc.*, No. 3:03-CV-0149, 2005 U.S. Dist. LEXIS 19902, at *15–16, 2005 WL 2234507 (D. Conn. May 31, 2005), *supplemented*, 2005 U.S. Dist. LEXIS 19903, 2005 WL 2231599 (D. Conn. July 15, 2005) (court found award of 6 years of front pay reasonable) (copies attached as **Exhibit K**). Here, just one (1) year of front pay would total a minimum of $27,040.00, bringing plaintiff's total back pay damages and front pay damages to approximately

$81,120.00 through the date of any judgment in this matter.  Further, plaintiff may intend to seek more than one year of front pay, which would increase the amount of his damages claims in this action.

32.    In addition to alleged lost wages and front pay, plaintiff claims to be entitled to recover damages for emotional distress, punitive damages and attorneys' fees, which, taken together, yield a total amount in controversy well in excess of $75,000.

33.    <u>Compensatory and Punitive Damages</u>.  If successful, plaintiff may be entitled to recover compensatory damages as a component of his claim for "money damages."  There is no cap on compensatory damages awarded under the CFEPA. *See Oliver v. Cole Gift Centers, Inc.*, 85 F. Supp. 2d 109, 112 n.1 (D. Conn. 2000) ("there is no limit on the amount of compensatory damages available under CFEPA.").

34.    Further, plaintiff requests punitive damages in his Complaint. (*See* Complaint, WHEREFORE ¶ subp. (4) (Exh. A).)   CFEPA provides that successful plaintiffs may recover "such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorney's fees and court costs." Conn. Gen. Stat. § 46(a)-104. "The statute does not explicitly provide for awards of punitive damages. From this, some Connecticut courts have found that the language of the statute precludes an award of punitive damages, while others have found that punitive damages are available under the statute." *Shaw v. Greenwich Anesthesiology Assocs., P.C.*, 200 F. Supp. 2d 110, 117 (D. Conn. 2002) (citations omitted). "When determining the jurisdictional amount in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered."  *See Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d

1531, 1535 (11th Cir. 1987).  Plaintiff has requested punitive damages in his Complaint and there is no indication that he is seeking less than the maximum allowable amount.

35.    While plaintiff's Complaint does not contain a dollar figure on his compensatory and punitive damages claims, and because these claims are legally available to plaintiff, these claims "are appropriately considered in the amount-in-controversy calculation." *Kamat v. Kurtha*, No. 05-CV-10618-KMW-THK, 2007 U.S. Dist. LEXIS 4593, at *8, 2007 WL 188738 (S.D.N.Y. Jan. 22, 2007) (copy attached as **Exhibit L**).

36.    Where, as here, attorneys' fees are demanded (*see* Complaint, ¶¶ 26, 29, 32, 35 & WHEREFORE (Exh. A), such fees are also properly included in calculating the amount-in-controversy.  *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079 (11th Cir. 2000); *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85 (2d Cir. 2012) ("Attorneys' fees may be used to satisfy the amount in controversy only if they are recoverable as a matter of right pursuant to statute."). Again, attorneys' fees are specifically laid out as recoverable pursuant to Conn. Gen. Stat. § 46(a)-104. It is unlikely that plaintiff would incur less than $75,000 in attorneys' fees if his claims were to proceed through trial.

37.    <u>Emotional Distress</u>. Plaintiff seeks damages for emotional distress. (*See Complaint* at p. 6, WHEREFORE subp. (3) (Exh. A).) Pursuant to CFEPA, a plaintiff may recover emotional distress damages and these damages are to be taken into account in determining the amount in controversy.  *See Baron,* 2012 U.S. Dist. LEXIS 52315 (Exh. E), at *8–10. Further, "emotional distress damages awards vary widely" and could well exceed the $75,000 threshold requirement. *Id.*; *see also Patino v. Birken Mfg. Co.*, No. HHD-CV-05-40161205, 2009 Conn. Super. LEXIS 1331, at *46, 2009 WL 1624365 (Conn.

Sup. May 15, 2009) (noting that emotional distress damages of $5,000 to $65,000 may be appropriate for "less severe discrimination cases," and awards of $100,000 to $400,000 may be appropriate for severe discrimination cases) (copy attached as **Exhibit M**).

38.   <u>Injunctive Relief</u>. Plaintiff also seeks injunctive relief, including reinstatement. (*See Complaint* at p. 6, WHEREFORE subp. (2) (Exh. A).) Plaintiff's demands for injunctive relief are themselves sufficient to satisfy the amount-in-controversy requirement. Plaintiff demands that the Court order that Plaintiff be reinstated. "Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and measured by the extent of the impairment to be prevented by the injunction." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991). In *Wise v. Marriott Int'l, Inc.*, the court found that the monetary value of reinstatement to an at-will position could potentially last indefinitely and thus, so could its potential value.  No. 06-CIV-11439, 2007 U.S. Dist. LEXIS 55611, at *15–16, 2007 WL 2200704 (S.D.N.Y. July 30, 2007) ("The potential monetary value of this injunctive relief alone precludes Petitioner from proving 'to a legal certainty' that the actual amount in controversy is less than $75,000.") (copy attached as **Exhibit N**). Here, the cost of Chipotle complying with the injunctive relief requested by Plaintiff could far surpass the $75,000 threshold. Plaintiff also seeks reinstatement to an at-will position which could lead to his employment for the next 20 years. The value of such reinstatement is well over $500,000.

39.   Damages allegations similar to those being made by plaintiff in this action have been held sufficient to satisfy the amount in controversy requirement. *See White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (holding that it was facially apparent that plaintiff's wrongful termination claim exceeded $75,000, based on her "lengthy list of

compensatory and punitive damages," including loss of pay, impaired earning capacity, emotional distress, etc., combined with a claim for attorneys' fees and punitive damages); *Aucina v. Amoco Oil Co.*, 871 F. Supp. 332, 334 (S.D. Iowa 1994) (the defendant-employer showed that the amount in controversy exceeded the minimum for diversity jurisdiction where former employee asserted claims for lost wages, lost benefits, mental anguish and punitive damages); *Baron,* 2012 U.S. Dist. LEXIS 52315 (Exh. E), at *8–10 (the defendant-employer showed that the amount in controversy exceeded the minimum for diversity jurisdiction where former employee asserted claims for back pay, emotional distress damages, and reasonable attorneys' fees under the CFEPA).

40.   Indeed, specific jury verdicts in employment cases in Connecticut indicate that verdict awards well in excess of the jurisdictional requisite have been awarded to plaintiffs in cases alleging discrimination, harassment and/or retaliation:

a.   *Shorter Jr. v. Hartford Financial Service; Rhodes*, 2005 WL 4256090, Conn. Jan. 2005 (**Exhibit O**): awarding plaintiff $170,000 in past wages and $85,000 in pain and suffering on harassment and wrongful termination claims.

b.   *Kimberly Bachiocchi v. Southern New England Telephone*, 2008 WL 6894517, D. Conn. July 8, 2008 (**Exhibit P**): Awarding plaintiff $20,000 in compensatory damages and $80,000 in punitive damages on sexual harassment and hostile work environment resulting in depression claims.

c.   *Bjorlin v. Ira P. Hersh Inc., F/K/A Macarthur Equities Ltd.*, 2013 WL 6912802, Conn. Sup. Nov. 7, 2013 (**Exhibit Q**): Awarding plaintiff $25,000 compensatory pain & suffering, $758,819 in past wages and $1,098,000 in compensatory future wages for age and gender discrimination and hostile work environment claims

d.   *Terri Tucker v. Journal Register East*, 2008 WL 4925070, D. Conn July 24, 2008 (**Exhibit R**): Awarding plaintiff $1,000,000 in compensatory damages and $3,000,000 in punitive damages for wrongful termination and retaliation in violation of plaintiff's civil rights.

41.     When the potential costs of medical expenses, emotional distress damages, punitive damages and attorneys' fees are added to plaintiff's claims for lost wages, it easily becomes "more likely than not" that the amount at issue in this lawsuit far exceeds the minimum amount required for diversity jurisdiction. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996).

42.     <u>Conclusion as to Diversity Jurisdiction</u>.  Because a reasonable reading of the value of plaintiff's CFEPA claims exceed $75,000, exclusive of interest and costs, and the action is between citizens of different states – plaintiff being a citizen of Connecticut, and defendant being a citizen of Delaware and Colorado – the district court has original jurisdiction over plaintiff's CFEPA claims under 28 U.S.C. § 1332(a).  As a result, plaintiff's CFEPA claims may be removed to this Court by defendant pursuant to 28 U.S.C. § 1441(a).

43.     <u>Venue</u>.  The District of Connecticut is the judicial district embracing the place where the state court case was brought and is pending (*see* 28 U.S.C. § 86), thus, it is the proper district court to which this case should be removed.  *See* 28 U.S.C. §§ 1441(a) & 1446(a).  In addition, the Hartford Division is the proper division within the District of Connecticut to which the case should be removed. *See* 28 U.S.C. §§ 1441(a) & 1446(a).

44.     <u>Notice</u>.  Copies of this Notice of Removal and a separate state court Notice of Removal of Action will be filed in the State Action and served on plaintiff's counsel.

45.     <u>Signature</u>.  Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal is signed by undersigned counsel pursuant to Rule 11, Federal Rules of Civil Procedure.

**CHIPOTLE MEXICAN GRILL, INC.**

By:_____/s/ Glenn A. Duhl_____
    Glenn A. Duhl ct03644
    Siegel, O'Connor,
        O'Donnell & Beck, P.C.
    150 Trumbull Street
    Hartford, CT 06103
    Tel.: (860) 280-1215
    Fax: (860) 527-5131
    gduhl@siegeloconnor.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2014, a copy of the foregoing Notice of Removal was served on counsel for Plaintiff, Daley Antoine, Amanda M. DeMatteis, Esq., Cicchiello & Cicchiello, LLP, 364 Franklin Avenue, Hartford, CT 06114, by first class mail, postage prepaid.  I further certify that a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      _____/s/ Glenn A. Duhl_____
      Glenn A. Duhl ct03644